1  BERNSTEIN LITOWITZ BERGER
     & GROSSMANN LLP
2  BLAIR A. NICHOLAS (Bar No. 178428)
   (blairn@blbglaw.com)
3  12481 High Bluff Drive, Suite 300
   San Diego, CA 92130
4  Tel:   (858) 793-0070
   Fax:   (858) 793-0323
5
           -and-
6
   AVI JOSEFSON
7  (avi@blbglaw.com)
   1285 Avenue of the Americas, 38th Floor
8  New York, NY 10019
   Tel:   (212) 554-1400
9  Fax:   (212) 554-1444

10 *Attorneys for Plaintiff Victor Denenburg*

11

12              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
13                   SAN JOSE DIVISION

14

| | |
|---|---|
| VICTOR DENENBURG, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FUSION-IO, INC., DAVID A. FLYNN, SHANE V. ROBISON, and DENNIS P. WOLF,<br><br>Defendants. | Case No.<br><br>ECF CASE<br><br>**COMPLAINT**<br><br>CLASS ACTION<br><br>DEMAND FOR JURY TRIAL |

COMPLAINT
Case No.

Plaintiff Victor Denenburg ("Plaintiff"), by and through his counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, *inter alia*, counsel's investigation, which includes review and analysis of: (a) regulatory filings made by Fusion-io, Inc. ("Fusion-io" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) press releases and media reports issued by and disseminated by the Company; (c) analyst reports concerning Fusion-io; and (d) other public information regarding the Company.

## I.   INTRODUCTION

1. This is a federal securities class action brought on behalf of purchasers of Fusion-io's publicly traded common stock between January 25, 2012 and October 23, 2013, inclusive (the "Class Period"). The claims asserted herein are alleged against Fusion-io and certain of the Company's senior executives (collectively, "Defendants"), and arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2. Fusion-io is a computer hardware and software systems company that designs and manufactures memory storage solutions using flash memory technology. Flash memory, a type of solid state memory, is traditionally used in small-scale applications such as mobile devices and portable "flash drives." Fusion-io's integrated hardware and software solutions, however, allow the Company's customers to utilize flash memory technology in large-scale data centers.

3. Since the Company's initial public offering in 2011, a limited number of what the Company calls "strategic" customers, including Facebook, Inc. ("Facebook") and Apple, Inc. ("Apple"), have accounted for a significant portion of the Company's revenues. Fusion-io's reliance on these strategic customers presented a material risk to the Company's ability to generate sales. In particular, revenue from Facebook and Apple were of critical importance to investors.

4. During the Class Period, Defendants misrepresented to investors that the Company was a market leader in large-scale flash memory applications and was not facing any

competitive pressure or risk from the commoditization of flash memory products. Defendants also issued unrealistically positive revenue guidance and misrepresented that the Company was able to anticipate the demand from its strategic customers based on its years of experience as their flash memory supplier. As a result of these misrepresentations, Fusion-io stock traded at artificially inflated prices during the Class Period.

5.  On January 30, 2013, Fusion-io shocked investors when it announced that it no longer anticipated achieving its previously issued revenue guidance for fiscal year 2013.[1] Although investors were dismayed by the Company's announcement, Defendants propped up the price of Fusion-io stock by misrepresenting the reason for the change in guidance as a temporary two-quarter shift in the timing of purchases from Facebook and Apple. Over the next several months, Defendants continued to assure investors that the Company was not experiencing any significant competitive pressure. Defendants also expressed confidence that after the two-quarter timing shift, the Company's strategic customers would return to Fusion-io, and not a competitor, to meet their flash memory needs.

6.  It was not until October 23, 2013, after the two quarters had passed and Fusion-io announced results from its first quarter of fiscal year 2014, that investors learned the truth. That day, the Company revoked its prior revenue guidance and announced that its expected gross margin in 2014 would fall significantly. The Company also announced that Chief Financial Officer ("CFO") Dennis Wolf and Chief Sales Officer James Dawson were leaving the Company. Following these disclosures, stock analysts commented that lower revenue growth and falling margins could only mean that the competitive pressures facing Fusion-io were more significant than the Company had represented.

7.  This disclosure caused the price of Fusion-io stock to decline from $12.98 per share to $9.82 per share, or 24%, damaging Plaintiff and the Class.

---

[1] Fusion-io's fiscal year end is June 30 and its fiscal quarters end on September 30, December 31, March 31, and June 30.

## II. JURISDICTION AND VENUE

8. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

9. Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b). Fusion-io maintains a "Silicon Valley Office" and conducts business in this District, and many of the acts and conduct that constitute the violations of law complained of herein occurred in and/or were issued from this District. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III. PARTIES

10. Plaintiff Victor Denenburg purchased shares of Fusion-io stock on the New York Stock Exchange during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

11. Defendant Fusion-io, a Delaware corporation, was founded in 2005 as Canvas Technologies, Inc. Fusion-io is a computer hardware and software systems company that designs and manufactures products using flash memory technology. Fusion-io maintains a "Silicon Valley Office" and conducts business in this District at 2880 Junction Avenue, San Jose, California. The Company's common stock trades on the New York Stock Exchange, which is an efficient market, under ticker symbol "FIO." Fusion-io currently has approximately 100 million shares of common stock outstanding.

12. Defendant David A. Flynn ("Flynn") co-founded Fusion-io with Rick White ("White"), and served as the Company's Chief Executive Officer ("CEO"), President, and Chairman of the Board of Directors, until his resignation on May 7, 2013.

13. Defendant Shane V. Robison ("Robison") is, and was since May 7, 2013, Fusion-io's CEO, President, and Chairman of the Board of Directors.

14. Defendant Dennis P. Wolf ("Wolf") is, and was at all relevant times, Fusion-io's Senior Vice President and CFO.

15. Defendants Flynn, Robison, and Wolf are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with Fusion-io, possessed the power and authority to control the contents of Fusion-io's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors. Each of the Individual Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

## IV. BACKGROUND

16. Founded in 2005 by Defendant Flynn and co-founder White, Fusion-io is a computer hardware and software systems company that designs and manufactures memory storage solutions using flash memory technology. Flash memory is a form of solid-state memory, meaning that it is a single, solid chip with no moving parts. Flash memory is also more compact than traditional hard drives, and, until recently, was primarily used for storing data on mobile devices and "flash drives."

17. Fusion-io's integrated hardware and software solutions provide the Company's customers with the ability to utilize flash memory technology in large-scale data centers. The Company sells its products through a global direct sales force, original equipment manufacturers, and other channel partners. Since the Company's 2011 initial public offering, a few "strategic" customers, including Facebook and Apple, have accounted for a significant portion of Fusion-io's revenues. Indeed, Facebook and Apple each accounted for 36% and 24% of Fusion-io's revenue, respectively, in fiscal year 2011, and 30% and 25% the Company's revenue, respectively, in fiscal year 2012.

1  V.     **DEFENDANTS' FALSE AND MISLEADING STATEMENTS AND OMISSIONS**

2         18.    On January 24, 2012, after markets closed, Fusion-io issued a press release
3  announcing its financial results for its fiscal second quarter ended December 31, 2011.  In the
4  press release, which was also filed with the SEC on Form 8-K, the Company reported quarterly
5  revenue of $84.1 million with gross margin of 51%.

6         19.    Later that same day, Fusion-io held a conference call with analysts and investors
7  to discuss the Company's earnings and operations.  During the conference call, Defendants Wolf
8  and Flynn explained that the Company faced minimal competitive pressure and that Fusion-io's
9  customers favored its products over those of its competitors.  Specifically, Defendant Wolf stated
10 that "[w]e continue to see negligible impact from competitive pricing pressure."  Defendant
11 Flynn added that "we're seeing these data centers evolve to use more and more flash as a
12 displacement for [competing products]."

13        20.    On April 26, 2012, Fusion-io issued a press release announcing its financial
14 results for its fiscal third quarter ended March 31, 2011.  In the press release, which was also
15 filed with the SEC on Form 8-K, the Company reported quarterly revenue of $94.2 million with
16 gross margin of 52.1%.  In the press release, Defendant Wolf touted that the Company's "vision
17 is resonating with customers and strategic partners, and we will continue to prioritize the
18 expansion of our market footprint along with investment in innovation."

19        21.    Later that same day, Fusion-io held a conference call with analysts and investors
20 to discuss the Company's earnings and operations.  During the conference call, Defendant Flynn
21 explained that competitive pressures on the Company remained minimal and that Fusion-io was
22 not losing customers to its competitors.  Specifically, Defendant Flynn stated that "we see on the
23 fringes competition with consumer-grade [flash memory] cards . . . And, like I said, that's
24 generally on the fringe and usually is situations that end poorly for the customers and we end up
25 in those accounts with deployments."  Defendant Wolf elaborated that "there were some fringe
26 commodity [flash memory] providers who tried to go in there on price. And you know what we
27 do? We let them fail. Then we come back in, we use the pricing that we think is appropriate, and
28 we almost always win. And that's how we really handle our pricing."

22.     On August 9, 2012, Fusion-io issued a press release announcing its financial results for its fiscal fourth quarter and fiscal year ended June 30, 2012.  In the press release, which was also filed with the SEC on Form 8-K, the Company reported annual revenue of $359 million with gross margin of 57.5%.  The Company also announced that revenue growth for fiscal year 2013 would be in the range of 45 to 50%.  In the press release, Defendant Flynn touted Fusion-io's "record revenue" and stated that the Company is "pleased with the momentum we have going into the next fiscal year."

23.     Later that same day, Fusion-io held a conference call with analysts and investors to discuss the Company's earnings and operations.  During the conference call, Defendant Wolf explained that based on the Company's experience with its strategic customers, including Facebook and Apple, Fusion-io was able to anticipate the demand from those customers through fiscal 2013.  Specifically, Wolf stated that "the strategic customers, we've had a couple years of experience with them now. So we have a better understanding of what their predictability will be going through fiscal 2013 now."  Defendant Wolf added that the Company is able to anticipate revenues from its strategic customers, including Apple, stating that "we think we know where our Facebook and Apple revenue will be."

24.     During the conference call, Defendant Flynn also touted the strength of the Company's competitive position and emphasized that there are significant barriers to entry barring potential competitors from taking market share from Fusion-io.  Specifically, to explain why firms could not easily compete with Fusion-io, Flynn stated that "it's really quite a hard problem to take these consumer grade . . . Flash chips and make them into an enterprise product that you can scale into thousands of servers."

25.     The announcement assured analysts that Fusion-io did not face any significant competition and that investors should not be concerned over commoditization of the Company's products.  For example, after the conference call, William Blair published a report stating that "[m]anagement noted no significant competitive pressure. We expect these strong margin results to ease investor concerns over commoditization in the [flash memory] market."

26.     Following the announcement of Fusion-io's strong revenue and gross margin

1    guidance and the assurances the Defendants provided on the conference call, the Company's
2    stock soared nearly 28% to close at $26.86.

3          27.    On October 24, 2012, the Company issued a press release announcing its financial
4    results for its fiscal first quarter ended September 30, 2012.  In the press release, which was also
5    filed with the SEC on Form 8-K, the Company reported quarterly revenue of $118 million with
6    gross margin of 59.4%.  In the press release, Defendant Flynn commented that the Company is
7    "pleased with our execution in the first quarter and our ability to continue to capture market
8    share."  The Company also reiterated that its "[f]iscal [y]ear 2013 guidance remains unchanged."

9          28.    Later that same day, Fusion-io held a conference call with analysts and investors
10   to discuss the Company's earnings and operations.  During the conference call, Defendant Wolf
11   emphasized that Fusion-io's revenue outlook remained in the range of 45% to 50% growth.
12   Specifically, Wolf stated "[o]ur outlook remains – as we said on the call, it remains unchanged."

13         29.    On January 30, 2013, after the market closed, the Company issued a press release
14   announcing its financial results for its fiscal second quarter ended December 31, 2012.  In the
15   press release, which was also filed with the SEC on Form 8-K, the Company reported quarterly
16   revenue of $120.6 million with gross margin of 61.8%, which exceeded analysts' consensus
17   expectations.  However, the Company also surprised investors and announced that it no longer
18   anticipated achieving its previously issued earnings guidance for the fiscal third quarter of 2013
19   and fiscal year 2013.  Specifically, Fusion-io lowered its third quarter revenue guidance to $80
20   million, and its fiscal 2013 revenue guidance to "approximately $420 to $440 million," which
21   represents revenue growth of about 17% to 22%—a far cry from the 45% to 50% growth the
22   Company had previously told investors they could expect.

23         30.    Despite the disappointing guidance revision, the Company told investors that the
24   change in guidance was due to a temporary shift in the timing of purchases from Fusion-io's
25   strategic customers.  Specifically, the press release stated that "the change in our guidance
26   reflects a *two-quarter shift* in the timing of [Facebook's and Apple's] bulk purchases."
27   (Emphasis added.)

28         31.    Later that same day, Fusion-io held a conference call with analysts and investors

to discuss the Company's earnings and operations. During the conference call, Defendant Flynn assured investors that the revised guidance reflects only a temporary shift in purchases from two strategic customers, and not a systemic change in demand from Facebook or Apple. In particular, Flynn reiterated that "[t]he change in our guidance is a result of a shift in the timing of both purchases from our two key accounts, specifically for the next two quarters." Defendant Flynn also explained that the efficiency of the Company's products, and not competitive pressure, led to lower demand from its strategic customers. Specifically, Flynn touted that "[w]hen building out data centers and expanding into new application areas, these customers have purchased in large volumes. They are now achieving greater efficiency thanks to our products, which has led to a shift in their near-term demands."

32. Flynn also assured investors that the Company was confident that the sales to Facebook and Apple would return to previous levels following the two quarter shift. Specifically, Flynn stated that "we work with these customers very closely and have an understanding of what new applications are coming online and how they are scaling them." Flynn added that "this is really about the timing of when they put in new infrastructure, not whether or not Fusion-io is a key part of that infrastructure."

33. Flynn also assured investors that the decline in demand from its strategic customers was not a result of an architectural shift away from Fusion-io's technology or competitive pressure. In particular, Flynn stated that "[w]e don't see any risk at this point from competition in these accounts in these architectures." Flynn summed up that "we are very confident that the uniqueness of our product and more importantly, the relationship with these customers means that when they decide to do their next step function in building new data centers are moving to new applications, that it will be with Fusion-io."

34. Following the announcement of the disappointing guidance revision, when the market reopened on January 31, Fusion-io stock dropped from $20.09 per share to $17.48 per share, or 13%.

35. On April 24, 2013, the Company issued a press release announcing its financial results for its fiscal third quarter ended March 31, 2013. In the press release, which was also

1  filed with the SEC on Form 8-K, the Company reported quarterly revenue of $87.7 million with gross margin of 55.1%. The Company also reiterated its fiscal year 2013 revenue guidance.

36. Following the Company's third quarter earnings announcement, Fusion-io held a conference call with analysts and investors to discuss the Company's earnings and operations. During the conference call, Defendant Flynn reiterated that the Company's relationship with its strategic customers remained strong and their demand for Fusion-io's products has not changed. Specifically, Flynn stated that the Company's "relationship with Facebook and Apple is strong . . . we are a key part of their infrastructure and expect to grow as they grow."

37. On May 8, 2013, Fusion-io made a shocking announcement that co-founders Flynn and White were leaving the Company. The Company also announced that Defendant Robison had been appointed as the Company's new CEO.

38. Following the Company's announcement, on May 15, 2013, Defendant Robison represented the Company at the JPMorgan Global Technology, Media and Telecom Conference. During the conference, Robison emphasized that the Company's decision to replace Flynn as CEO was based on nothing more than Flynn's inexperience running a large, established company. Specifically, Robison insisted that "in the case of the founders, they have done a great job at the start-up level in taking the Company to where we are today but didn't have a lot of experience in running big companies. It is no more complicated than that." Robison also stated that Flynn and White would "stay on the Board and they are both going to be advisers to me as we move through the next 12, 18 months and maybe beyond that depending on their interest." A few weeks later, however, both Flynn and White resigned from the Company's Board of Directors.

39. Following the announcement that Flynn and White were leaving the Company, Fusion-io stock dropped from $18.00 per share to $14.60 per share, or 18.9%.

40. On August 7, 2013, the Company issued a press release announcing its financial results for its fiscal fourth quarter and fiscal year ended June 30, 2013. In the press release, which was also filed with the SEC on Form 8-K, the Company reported annual revenue of $432.4 million with gross margin of 58.9%. The Company also announced fiscal year 2014

1   revenue growth guidance of approximately 20%.

2           41.     Later that same day, Fusion-io held a conference call with analysts and investors
3   to discuss the Company's earnings and operations. During the conference call, Defendant Wolf
4   emphasized that the Company still had opportunities to sell its products to its strategic
5   customers, including Facebook and Apple. Specifically, Wolf stated that "there is opportunity at
6   Apple and Facebook . . . as we had an established footprint because when their databases are
7   growing, when their data footprint is growing, we actually are able to sell product as a
8   maintenance on a quarterly basis."

9           42.     On October 23, 2013, Fusion-io revoked its prior 20% revenue growth guidance
10  and announced that its expected gross margin in 2014 would decline and range from only 52% to
11  54%. The Company also announced that CFO Dennis Wolf and Chief Sales Officer James
12  Dawson were leaving the Company.

13          43.     Despite Defendant's assurances that Facebook and Apple had only temporarily
14  reduced their purchases of Fusion-io products, and would resume purchasing at their pre-January
15  30 levels, the Company finally revealed that these strategic customers were decreasing their
16  purchases of Fusion-io's products. The announcement prompted analysts at William Blair to
17  remark in their October 23 report that "Fusion faces serious and fundamental problems. It is
18  evident that the company's two largest strategic customers [(Facebook and Apple)] are becoming
19  less predictable purchasers and that they are apparently tapering off their investments in Fusion
20  hardware." The report also stated that "Fusion [is] competing more on price as evidenced by
21  management's significantly curtailed gross margin guidance . . . . In other words, many of the
22  concerns around increased competition, commoditization, and customer concentration have
23  come to fruition."

24          44.     Analysts with JPMorgan were also surprised by the sudden decrease in gross
25  margins, which, according to the analysts, could only mean that competitive pressures were
26  stronger than the Company had indicated. Specifically, in their October 24 report, JPMorgan
27  analysts commented that the "[c]ompetitive moat could be shrinking already. In our view, a key
28  sign-post is gross margin and how it trends directionally."

45. Following this disclosure, Fusion-io stock fell from $12.98 per share to $9.82 per share, or 24%.

46. The aforementioned statements, which were made by Defendants during the Class Period, were false and misleading because Fusion-io's flash memory products had become increasingly commoditized, which allowed the Company's strategic customers to seek out lower cost alternatives from the Company's competitors.

47. As a result of Defendants' false statements, Fusion-io common stock traded at artificially inflated levels during the Class Period. When Defendants revealed Fusion-io's true competitive pressure and its impact on the Company's business prospects, the price of Fusion-io common stock plummeted by about 70% from its Class Period high.

## VI. LOSS CAUSATION

48. During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market. This artificially inflated the price of Fusion-io common stock and operated as a fraud or deceit on the Class (as defined below). Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market on January 30, 2013, May 8, 2013, and October 23, 2013, the price of Fusion-io common stock fell precipitously, as the prior artificial inflation came out of the price over time. As a result of their purchases of Fusion-io common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## VII. CLASS ACTION ALLEGATIONS

49. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased the common stock of Fusion-io during the Class Period (the "Class"). Excluded from the Class are Defendants and their families, directors, and officers of Fusion-io and their families and affiliates.

50. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Fusion-io has approximately 100 million shares of common stock

outstanding, owned by hundreds or thousands of investors.

51. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    (a) Whether Defendants violated the Exchange Act;

    (b) Whether Defendants omitted and/or misrepresented material facts;

    (c) Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

    (d) Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

    (e) Whether the price of Fusion-io common stock was artificially inflated;

    (f) Whether Defendants' conduct caused the members of the Class to sustain damages; and

    (g) The extent of damages sustained by Class members and the appropriate measure of damages.

52. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

53. Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

54. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## VIII. INAPPLICABILITY OF STATUTORY SAFE HARBOR

55. Fusion-io's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

56. Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an

1 executive officer of Fusion-io who knew that the statement was false. None of the historic or
2 present tense statements made by Defendants were assumptions underlying or relating to any
3 plan, projection, or statement of future economic performance, as they were not stated to be such
4 assumptions underlying or relating to any projection or statement of future economic
5 performance when made, nor were any of the projections or forecasts made by Defendants
6 expressly related to, or stated to be dependent on, those historic or present tense statements when
7 made.

## IX. PRESUMPTION OF RELIANCE

57. At all relevant times, the market for Fusion-io's common stock was an efficient market for the following reasons, among others:

(a) Fusion-io stock met the requirements for listing, and was listed and actively traded on the New York Stock Exchange, a highly efficient and automated market;

(b) As a regulated issuer, Fusion-io filed periodic public reports with the SEC and the New York Stock Exchange;

(c) Fusion-io regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) Fusion-io was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s). Each of these reports was publicly available and entered the public marketplace.

58. As a result of the foregoing, the market for Fusion-io securities promptly digested current information regarding Fusion-io from all publicly available sources and reflected such information in the price of Fusion-io common stock. Under these circumstances, all purchasers of Fusion-io common stock during the Class Period suffered similar injury through their purchase of Fusion-io common stock at artificially inflated prices and the presumption of

1 reliance applies.

## COUNT I

### For Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Against All Defendants

59. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

60. During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Fusion-io common stock at artificially inflated prices.

61. Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Fusion-io common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

62. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

63. During the Class Period, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false or misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

64. Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal Fusion-io's true condition from the investing public and to support the artificially inflated prices of the Company's common stock.

65. Plaintiff and the Class have suffered damages in that, in reliance on the integrity

of the market, they paid artificially inflated prices for Fusion-io common stock.  Plaintiff and the Class would not have purchased the Company's common stock at the prices they paid, or at all, had they been aware that the market prices for Fusion-io common stock had been artificially inflated by Defendants' fraudulent course of conduct.

66.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

67.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT II

### For Violation of Section 20(a) of the Exchange Act Against the Individual Defendants

68.     Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

69.     The Individual Defendants acted as controlling persons of Fusion-io within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about Fusion-io, the Individual Defendants had the power and ability to control the actions of Fusion-io and its employees.  By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

**X.     PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A.     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.     Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest

thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D. Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## XI. JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 15, 2014

Respectfully submitted,

BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP

 */s/ Blair A. Nicholas*
BLAIR A. NICHOLAS

Blair A. Nicholas (Bar No. 178428)
(blairn@blbglaw.com)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:   (858) 793-0070
Fax:   (858) 793-0323

-and-

AVI JOSEFSON
(avi@blbglaw.com)
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Tel:   (212) 554-1400
Fax:   (212) 554-1444

*Attorneys for Plaintiff Victor Denenburg*

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Victor Denenburg, hereby certify, as to the claims asserted under the federal securities laws, that:

1. I have reviewed a complaint and authorize its filing.

2. I did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. I am willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. My transactions in the Fusion-io, Inc. securities that are the subject of this action are set forth in the chart attached hereto.

5. I have not sought to serve as a lead plaintiff or representative party on behalf of a class in any action under the federal securities laws filed during the three-year period preceding the date of this Certification.

6. I will not accept any payment for serving as a representative party on behalf of the Class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 15 day of January, 2014.

_____
Victor Denenburg

**Victor Denenburg**
Transactions in Fusion-io, Inc.

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 3/7/2012 | 50,000 | $31.2552 |
| Sale | 3/15/2012 | (20,000) | $31.2055 |
| Sale | 3/16/2012 | (10,796) | $31.3000 |